Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

Alexandria Division

FILED
MAILROOM
MAY 3 2021
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MARC J. STOUT,
ROBERT B. STOUT,

*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)

-v-

DEA AGENT JOHN DOE,
DHS AGENT KALENICH,

*Defendant(s)*
(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)

Case No. 1:21cv559-CMH-TCB
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☒ Yes ☐ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Page 1 of 6

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | MARC J. STOUT, ROBERT B. STOUT |
| Address | 30 WILLOW BRANCH PLACE |
| City | FREDERICKSBURG |
| State | VA |
| Zip Code | 22405 |
| County | |
| Telephone Number | (540) 408-9952 |
| E-Mail Address | FORMULAFOCUSED@GMAIL.COM |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | JOHN DOE |
| Job or Title (if known) | DEA AGENT |
| Address | 600 ARMY NAVY DRIVE |
| City | ARLINGTON |
| State | VA |
| Zip Code | 22202 |
| County | |
| Telephone Number | |
| E-Mail Address (if known) | |

[X] Individual capacity   [ ] Official capacity

**Defendant No. 2**

| | |
|---|---|
| Name | KALENICH |
| Job or Title (if known) | DHS AGENT |
| Address | 3801 NEBRASKA AVENUE NW |
| City | WASHINGTON, D.C. |
| State | |
| Zip Code | 20016 |
| County | |
| Telephone Number | |
| E-Mail Address (if known) | |

[X] Individual capacity   [ ] Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Defendant No. 3
Name
Job or Title *(if known)*
Address

           *City*    *State*    *Zip Code*

County
Telephone Number
E-Mail Address *(if known)*

☐ Individual capacity ☐ Official capacity

Defendant No. 4
Name
Job or Title *(if known)*
Address

           *City*    *State*    *Zip Code*

County
Telephone Number
E-Mail Address *(if known)*

☐ Individual capacity ☐ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☒ Federal officials (a *Bivens* claim)

☐ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

FIRST AMENDMENT RIGHT TO FREEDOM OF THE PRESS,
FOURTEENTH AMENDMENT RIGHT TO LIBERTY AND DUE PROCESS

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

JOHN DOE IDENTIFIED HIMSELF AS A DEA AGENT,
KALENICH WAS UNIFORMED AND IDENTIFIED HIMSELF AS A DHS AGENT

## III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

ARLINGTON, VIRGINIA

B. What date and approximate time did the events giving rise to your claim(s) occur?

JANUARY 7, 2020, 4:00 - 5:00 PM

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

SEE ATTACHED "STATEMENT OF CLAIM III. C."

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

LOSS OF LIBERTY,
MENTAL AND EMOTIONAL ANGUISH AND DISTRESS

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

COMPENSATORY DAMAGES IN AN AMOUNT TO BE DETERMINED,
PUNITIVE DAMAGES IN AN AMOUNT TO BE DETERMINED

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 04/28/2021

Signature of Plaintiff: /s/ [signature]

Printed Name of Plaintiff: Marc J. Stout        Robert Stout

### B. For Attorneys

Date of signing:

Signature of Attorney:

Printed Name of Attorney:

Bar Number:

Name of Law Firm:

Address:

City   State   Zip Code

Telephone Number:

E-mail Address:

1. Marc and Robert entered the DEA national headquarters pursuant to 41 C.F.R. §102-74.420 and DHS/FPS Operational Readiness Order HQ-ORO-002-2018 to film the interior of the DEA's publicly-accessible lobby for news purposes.

2. 41 C.F.R. §102-74.420 states:

    "Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property may take photographs of -

    (a) Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;

    (b) Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and

    (c) Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes."

3. DHS/FPS Operational Readiness Order HQ-ORO-002-2018 states:

    "FPS has experienced an increase in the public's interest in photographing and videotaping both exterior and interior of federal facilities protected by FPS, to include individual's expressing their First Amendment-protected rights by intentionally photographing and videotaping the exterior and interior of a federal facility and law enforcement in the course of their duties to test FPS law enforcement and PSO response."

    "To address this increase in photography and videotaping by the public, this Operational Readiness Order reiterates the 2010 guidance; provides clarification on the public's right to photograph publicly accessible federal facility building entrances, lobbies, foyers, corridors and auditoriums; and directs FPS

law enforcement personnel and PSOs to maintain security without adversely impacting the public's rights relating to photography and videotaping."

"This right, however, does not authorize a photographer to intrude on restricted space surrounding a security post, create loud or unusual noises or cause a nuisance, obstruct the usual use of entrances, lobbies and other commonly accessible space, impede or disrupt the performance of official duties by government employees or federal contractors, including the PSOs, nor prevent the public from obtaining government services provided in the facility in a timely manner."

4. For purposes of both 41 C.F.R. §102-74.420 and DHS/FPS Operational Readiness Order HQ-ORO-002-2018, verbal commands are not formal or official enough to be considered regulations, rules, orders, or directives.

5. Not one step into the lobby after entering through the revolving door that serves as the public entrance, Marc and Robert were accosted by a security guard who asserted to both of them, "You can't come in here and record."

6. Marc and Robert explained to the security guard that the publicly-accessible lobby was not a restricted area and that Marc and Robert weren't planning on trying to enter any restricted areas.

7. The public entrance to the lobby was not in any way visibly secured or restricted. Once inside the lobby, there were security guards, metal detectors, and screening areas and devices that separated the lobby from the rest of the building.

8. There was a staffed visitors' desk, an ATM, and a cushioned seating area in the lobby.

9. One of the security guards politely and calmly engaged Marc in a civil conversation, asking Marc, "Why are you here?" Marc responded that him and Robert were there to practice their Constitutional rights to liberty, freedom of the press, and protest. Marc and

Robert consider gathering news content as a form of silent protest and consider 41 C.F.R. §102-74.420 to create a liberty interest.

10. Security personnel continued to try to convince Marc and Robert to exit the building and attempted to forcibly identify Robert.

11. Marc and Robert engaged in a stand-off with security personnel in the lobby until John Doe (Exhibit A - Screenshot of John Doe) arrived on scene from somewhere in the building.

12. Up until this point, while some of the verbal exchanges between the security personnel and Marc and Robert were expressed through frustrated voices, there was no yelling, shouting, hollering, or loud or otherwise disruptive discourse.

13. Agent John Doe arrived on scene. Marc asked John Doe to please inform members of the security staff that Marc and Robert were allowed to film inside the lobby. Marc asked John Doe to please refer to federal policy on filming lobby interiors.

14. John Doe stated to Marc and Robert that the lobby wasn't publicly-accessible, but in the very same breath asked Marc and Robert if they were there to see someone.

15. John Doe stated that he was calling Federal Protective Service to have Marc and Robert removed from the facility. It was at this point that Marc began to feel incited, impassioned, and overzealous.

16. Marc attempted to disrespect and insult John Doe, and challenged John Doe's authority. Marc called John Doe names and attempted to antagonize John Doe. Multiple times, Marc yelled out "Fuck the DEA" as people exited the building from work.

17. Marc and Robert engaged in a stand-off with John Doe and the other DEA agents in the lobby.

18. Arlington County police arrived on-scene outside the building. Marc and Robert exited the building to speak with the Arlington County officers who were already speaking to

DEA agents. Arlington police said that they would rather wait for FPS to arrive to make a determination.

19. Marc and Robert attempted to reenter the lobby to wait inside for FPS. DEA agents quickly created a "human-chain" across the front of the public entrance causing Marc and Robert to make brief physical contact with the agents. This resulted in a light scuffle between Marc and Robert and the DEA agents. The scuffle was eventually broken up voluntarily by both sides.

20. After the scuffle, and even before that, the DEA agents flipped their I.D. badges around and tucked them into their shirt pockets as Marc and Robert requested the names and badge numbers of every agent involved in the hands-on encounter. Every agent present refused to identify themselves.

21. John Doe stated to Marc and Robert that Marc and Robert were allowed to film anywhere outside on the property but that Marc and Robert could not go back inside for any purpose.

22. Department of Homeland Security Agent Kalenich (Exhibit B - Picture of Kalenich) arrived on scene. Kalenich stated to Marc and Robert that the DEA headquarters was "private property." Kalenich stated to Marc and Robert that not only could Marc and Robert not reenter the building's lobby, but that Marc and Robert were trespassed from the entirety of the property under threat of arrest.

23. Marc asked John Doe to formally and officially state the reason why Marc and Robert were being trespassed. John Doe responded, "Because you don't have any official business here." Marc stated to John Doe that filming the lobby was official business. John Doe responded that it was not.

24. Marc and Robert pleaded with Kalenich to at least provide Marc and Robert with all of the agents' names and badge numbers. Kalenich said that he didn't know any of the

agents' names or badge numbers and that he had no way of obtaining the agents' names or badge numbers.

25. Marc and Robert left the property under threat of arrest for trespassing.

26. The defendants' conduct was intentional, reckless, outrageous, intolerable, and severe.

27. The defendants acted with evil motive or intent, or callous or reckless disregard for Plaintiffs' federally protected rights.