IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARC J. STOUT, ROBERT B. STOUT, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:21-cv-559 (CMH/TCB) |
| JEFFREY KEENEN, Unit Chief, Drug Enforcement Administration's Headquarters Security & Identification Unit; DHS AGENT KALENICH, | ) |
| Defendants. | ) |

**CONSOLIDATED REPLY MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Federal Defendants submit this consolidated reply memorandum of law in further support of their motion to dismiss.[1]

## INTRODUCTION

In this *Bivens* action, Plaintiffs seek to hold two federal officials individually liable for damages for not letting Plaintiffs remain in the DEA federal facility because Plaintiffs undisputedly had no DEA business there, refused to provide identification and undergo security screening, repeatedly "yelled out 'Fuck the DEA'" and other expletives, caused security guards to have to redirect and usher traffic through the lobby, and overall disrupted and created a nuisance in a federal workplace—all in violation of numerous federal regulations. Notwithstanding their undisputed conduct, Plaintiffs accuse the two officials—Defendant Keenen with the DEA's Headquarters

---

[1] Plaintiffs emailed two versions of their Opposition brief to undersigned counsel on November 8, 2021. That email did not constitute proper service, and Federal Defendants were not properly served until November 16, when the first version of Plaintiffs' Opposition was filed on the docket. Nevertheless, Federal Defendants' reply brief was timely prepared in the meantime and ready for filing pending entry of Plaintiffs' second (corrected) Opposition on the docket on November 17.

1

Security & Identification Unit and Defendant Kalenich with the Federal Protective Service—of violating their First Amendment right to freedom of the press.[2]

Plaintiffs have no viable cause of action, and their claims must be dismissed. The Supreme Court has admonished that expanding the *Bivens* remedy beyond the mere three instances in which that Court has permitted the cause of action is "disfavored judicial activity." Plaintiffs concede—as they must—that their case presents a new *Bivens* context, as neither the Supreme Court nor Fourth Circuit has ever recognized a First Amendment-based *Bivens* remedy in any context. And Plaintiffs' Opposition fails to meaningfully grapple with the special factors Federal Defendants identified that counsel hesitation in expanding the *Bivens* remedy here. Instead, Plaintiffs' arguments betray a core misunderstanding of the federal regulations that prohibited the very conduct they admit.

Moreover, even if the Court were to recognize a *Bivens* cause of action here, Plaintiffs' claims still would be subject to dismissal because Federal Defendants are entitled to qualified immunity. Plaintiff's Opposition advances nothing more than a conclusory—and incorrect—statement that appears to argue they had the absolute right to film in the DEA lobby regardless of their conduct and (non)compliance with other federal regulations. As countless courts have held, however, the right to film is not without its restrictions, and "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def.*, 473 U.S. 788, 799-800 (1985). Against this overwhelming authority, Plaintiffs find no support for their claim that Defendants Keenen or Kalenich violated their First Amendment rights, much less that Plaintiffs had

---

[2] Plaintiffs additionally asserted a "Fourteenth Amendment right to liberty and due process" in their Complaint but failed to provide any allegations in support of such a claim, *see* Dkt. No. 19 ("Br.") at 14, and failed to address such a claim at all in their Opposition, *see* Dkt. No. 23 ("Opp.").

any "clearly established" constitutional right to film or remain in the lobby of a federal facility while yelling "Fuck the DEA" and other expletives, disrupting normal government operations, and refusing to abide by security and conduct requirements applicable to all persons on federal property.

## ARGUMENT

### I. The Court Should Decline to Recognize a *Bivens* Remedy in This New Context

"[F]or almost 40 years, [the Supreme Court] has consistently rebuffed requests to add to the claims allowed under *Bivens*," and—particularly after the watershed decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)—the Court's "watchword is caution," with any expansion of *Bivens* representing "disfavored judicial activity." *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020). In short, courts *may not* expand the *Bivens* remedy substantially beyond the mere three instances in which the Supreme Court has already done so (*Bivens*, *Davis*, and *Carlson*). *Abbasi*, 137 S. Ct. at 1855-57. Thus, at the outset, this Court should dismiss Plaintiffs' claims because "[t]he Supreme Court has never recognized a First Amendment based *Bivens* remedy in any context." *Earle v. Shreves*, 990 F.3d 775, 779 (4th Cir. 2021).

As the opening brief explained, the two-step *Abbasi* framework requires courts to determine, first, "whether a case presents a new *Bivens* context" and, if so, whether there are "special factors counselling hesitation." 137 S. Ct. at 1857, 1859. If the answer to both steps is yes, the Supreme Court's precedents "make clear that a *Bivens* remedy will not be available." *Id.* at 1857.

Here, the claims easily clear the first step of this framework, as Plaintiffs themselves "concede that 'this case presents a new *Bivens* context.'" Opp. at 7; *see also* Br. at 8-9. And although Plaintiffs say the novel context is not "meaningful," Opp. at 7, they provide no elaboration on that conclusory statement and no response to the analysis in the opening brief explaining why the claims here are fundamentally different from those in the Supreme Court's three *Bivens* cases.

The second step of the *Abbasi* framework—which asks whether any special factors counsel hesitation in creating a new *Bivens* remedy—is also readily met here. The opening brief discussed at

3

least five such special factors: (1) that Plaintiffs' complaints are to the enforcement of existing federal regulations regarding visitor requirements and conduct on federal property; (2) that Plaintiffs could seek injunctive relief against those regulations; (3) the significant disruption to government operations system-wide were individuals permitted to enter any federal building, disregard identification and security requirements, and loiter and do whatever they please however they please on federal property; (4) that the gravamen of Plaintiffs' claims is a challenge to standard security responses to disruptive individuals at a workplace, not the sort of law enforcement activity at the heart of *Bivens* jurisprudence; and (5) the attempt to widen the scope of government officials susceptible to suit under *Bivens* beyond the law enforcement officers whose conduct was at issue in the primary *Bivens* cases. Br. at 10-12.

The arguments in the Opposition are difficult to understand, as Plaintiffs expressly concede the legitimacy of the regulations requiring identification and security screening, and prohibiting loitering and disorderly conduct, that formed the basis for Defendants Keenen and Kalenich's actions in this case. Opp. at 7. That concession alone confirms the myriad special factors identified in the opening brief that caution against an expansion of *Bivens* here.

Plaintiffs appear to argue that those regulations are mere "DEA building policies" that could be "subsume[d] and supersede[d]." *Id.* at 7-8. On the contrary, those regulations were promulgated through formal rulemaking, published in the Code of Federal Regulations, and apply "to all property under the authority of GSA"—like the DEA federal facility here—and to "all persons entering in or on such property." 41 C.F.R. § 102-74.365; *see also* "Federal Management Regulation; Real Property Policies Update," 70 Fed. Reg. 67786-01 (Nov. 8, 2005) (final rule). Indeed, the "DHS/FPS Order" that Plaintiffs rely on explicitly reiterates conduct restrictions that are set forth in full in 41 C.F.R. § 102-74.390—restrictions that the Fourth Circuit has already held do not violate the First Amendment. Opp. at 8; Compl. at p. 8 ¶ 3; *United States v. Cassiagnol*, 420 F.2d 868, 872-75 (4th Cir.

4

1970). And the other regulations in the "Federal Code" authorize inspection of all items brought onto federal property, 41 C.F.R. § 102-74.370, and require compliance with official signage of a directory nature, *id.* § 102-74.385; *see also* Pl.'s Video at 1:18-1:20 (depicting the "NOTICE," in all caps, that "all persons and vehicles entering or leaving this facility consent to an inspection of themselves and their vehicle")—all of which Plaintiffs here refused, as reflected in their Complaint and videos.[3] Those collective regulations are precisely what applied here to Plaintiffs' disruptive conduct and lack of official business with any DEA employee.

Plaintiffs' fundamental misunderstanding of these federal regulations infects much of the remainder of their response to Federal Defendants' special factors analysis. For instance, they contend that the DHS/FPS Order somehow *permits* the significant impact on government operations that would follow if their claims were allowed to proceed under *Bivens*. Opp. at 9-10. But their own Complaint admits that the DHS/FPS order makes all photography subject to conduct restrictions. Compl. pp. 7-8 ¶ 3; *see also id.* at p. 7 ¶ 2 (also conceding that 41 C.F.R. § 102-74.420 permits photography "[e]xcept where security regulations, rules, orders, or directives apply"). And as already noted, all persons—including "camerapeople" and photographers—entering federal property are further subject to additional conduct and security provisions contained in the Code of Federal Regulations, title 41, subpart C. Nor, in all events, could the DHS/FPS Order itself authorize any *Bivens* remedy, which is a *judicially* created remedy (and a disfavored one, at that).

Likewise, Plaintiffs appear to argue that their claims challenge standard law enforcement activity because "there was a standard Federal Code in this case to enforce, but it was circumvented by the Defendants instead." Opp. at 10. Setting aside that Plaintiffs' reasoning is unclear and

---

[3] Plaintiffs argue, immaterially, that the DHS/FPS Order does not contain these requirements. Opp. at 8. The DHS/FPS Order does not purport to set forth all requirements for individuals entering federal property; that is the purpose of the federal regulations at 41 C.F.R. subpt. C, not to mention the signage displayed in the DEA lobby and plainly visible in Plaintiffs' videos.

5

nonresponsive to the discussion of this special factor in the opening brief, *see* Br. at 11-12, their premise is also wrong. Far from "circumventing" the Code of Federal Regulations, Federal Defendants instead enforced its provisions explicitly making photography subject to "security regulations, rules, orders, or directives," 41 C.F.R. § 102-74.420, and setting forth various requirements applicable to "all persons entering in or on [federal] property" that Plaintiffs undisputedly disregarded, *id.* §§ 102-74.365, 102-74.370, 102-74.385, 102-74.390.[4]

Finally, Plaintiffs assert that this case "is indistinguishable from *Dyer*" because they "were punished for filming, and for no other reason." Opp. at 10. This argument lacks legal and factual merit. As Federal Defendants explained in the opening brief, Judge Gibney in the Richmond Division recognized a *Bivens* cause of action in *Dyer* under very different circumstances—none of which Plaintiffs' Opposition addresses. *See* Br. at 12 n.6. Crucially, unlike the "peaceful nondisruptive" filming in an airport that occurred in *Dyer*, Plaintiffs here entered a federal workplace that members of the public do not frequent unless they have business with the DEA, and proceeded to violate federal regulations prohibiting loitering and disorderly conduct—as demonstrated by their own admissions that they repeatedly "yelled out 'Fuck the DEA,'" and became "incited, impassioned, and overzealous." Compl. at p. 9 ¶¶ 15-16. Further unlike in *Dyer*, at no point did Federal Defendants prevent Plaintiffs from filming, order them to stop filming, or seize or delete the film; as Plaintiffs admit, Defendant Keenen even told them they could continue filming mere feet outside. Compl. at p. 10 ¶ 21; *see also* Pls.' Video at 14:04-14:10 ("It's not about what you're videoing; it's about your purpose here. You have no purpose here."). Accordingly, *Dyer* provides Plaintiffs no

---

[4]    Plaintiffs also contend in wholly conclusory fashion that Defendant Keenen "certainly *is* a law enforcement officer." Opp. at 10. Plaintiffs are wrong. Defendant Keenen is a member of the DEA's security team, not a law enforcement officer—as Plaintiffs themselves bemoaned when they learned of his position. *See* Pls.' Video at 12:26-12:42 ("I want the DEA that carries a sidearm. I don't want no fucking administrative DEA. . . . Get the field agents down here.").

assistance here, as this case implicates various special factors that the *Dyer* court did not consider.

At bottom, the straightforward application of the *Abbasi* framework here makes plain that Plaintiffs' claims arise in a novel and manufactured context that the Supreme Court and Fourth Circuit to this day have refused to recognize under their *Bivens* jurisprudence. If a cause of action for damages is to exist in this context, it must originate with Congress. *Abbasi*, 137 S. Ct. at 1857-58 ("It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation."). The Court should dismiss Plaintiffs' claims.

## II. Federal Defendants Are Entitled to Qualified Immunity

Even if the Court were to deem it appropriate to imply a *Bivens* remedy here, Federal Defendants still would be entitled to qualified immunity on Plaintiff's claims. In their Opposition, "Plaintiffs concede to the Defendants' legal analysis of the doctrine of qualified immunity." Opp. at 11. Under that analysis, federal officials enjoy qualified immunity from suit unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1999). Thus, a plaintiff must demonstrate *both* that a constitutional violation occurred, *see Pike v. Osbourne*, 301 F.3d 182, 184 (4th Cir. 2002), *and* that the contours of the constitutional right "ha[d] been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional," *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991).

The opening brief explained the extensive reasons why Plaintiffs' allegations fail the qualified immunity test. Plaintiffs' Opposition does not respond to that discussion in any meaningful way. Instead, Plaintiffs offer a single-sentence argument in response:

> the DHS/FPS Order and Federal Code create an expressly public forum for news purposes, and clearly establish the right to film, unobstructed, in publicly-accessible federal lobbies, including, and especially, the DEA lobby in question.

Opp. at 11. This conclusory argument is insufficient to overcome Federal Defendants' qualified

7

immunity analysis for numerous reasons.

First, Plaintiffs' assertion is entirely conclusory. It does nothing more than state the legal conclusion that (in Plaintiffs' view) the DEA lobby is an "expressly public forum"[5] and that "the right to film, unobstructed, in publicly-accessible federal lobbies" was "clearly establish[ed]." *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (rejecting "mere conclusory statements").

Second, Plaintiffs' conclusory statement is also incorrect. Plaintiffs themselves "concede that the lobby is not *arguendo*, an expressly public forum for purposes of free speech and expression, or for protesting." Opp. at 6 n.3. And, as courts have explained, there is no distinction between the various types of First Amendment expressive activities for purposes of forum analysis. *See, e.g.*, *John K. MacIver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 611-612 (7th Cir. 2021) (rejecting plaintiff's attempt to differentiate newsgathering from other First Amendment expressive activities for purposes of forum analysis). Thus, Plaintiffs' attempt to characterize the DEA lobby as an "expressly public forum for news purposes" is belied by their own admission that it is a *nonpublic* forum for every single other kind of expressive activity covered by the First Amendment.

Moreover, Plaintiffs fail to engage at all with Federal Defendants' extensive forum analysis. As explained in the opening brief, a public forum is not created "whenever members of the public are permitted freely to visit a place owned or operated by the Government." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 680 (1992). Nor does the Supreme Court find an "expressly dedicated" public forum "when the nature of the property is inconsistent with expressive activity." *Cornelius*, 473 U.S. at 803. As such, numerous courts have not hesitated to find that federal lobbies and other similar spaces are *nonpublic* fora precisely because such spaces are "entirely unsuitable for

---

[5] Federal Defendants assume Plaintiffs are referring to the "expressly dedicated," or "designated" public forum, as they proffer no argument or support for the notion that the DEA lobby is in any way akin to a public street, sidewalk, or park, *i.e.*, the "traditional public forum." *See* Br. at 15 (describing the three types of fora for purposes of First Amendment activity).

any expressive activity which would attract a crowd, generate noise, or incite disruptive behavior, as any of these factors would seriously interfere with maintenance of security in the building." *Claudio v. United States*, 836 F. Supp. 1219, 1224-25 (E.D.N.C. 1993) (lobby of federal facility); *see also Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) (lobby of federal courthouse); *United States v. Murtari*, 120 F. App'x 378, 380 (2d Cir. 2004) (corridors of federal facility). As the Supreme Court itself has explained, "[t]he federal workplace, like any place of employment, exists to accomplish the business of the employer," a purpose generally unsuited to expressive activity. *Cornelius*, 473 U.S. at 805. Just so here, where the very purpose of the DEA lobby is to facilitate security and entry and exit from the federal workplace—not to host whoever wishes to partake in whatever First Amendment activity for however long and in whatever manner. *See* Br. at 16.[6]

Nor do Plaintiffs address the reasonableness of Defendants Keenen and Kalenich's actions in the face of Plaintiffs' undisputed lack of business at the DEA and their admitted disorderly behavior, all in violation of federal regulation. *See* Opp. at 11. At most, in their factual recitation, Plaintiffs attempt to shift focus to other "security guards" who "immediately accosted" them "before the Plaintiffs stepped one foot into the facility's lobby or said one word to facility

---

[6] Even if the DEA lobby were somehow an "expressly dedicated" or "designated" public forum, Plaintiffs' claims still would fail to overcome the qualified immunity analysis because time, place, and manner regulations of First Amendment activity in a designated public forum are permissible so long as they are content-neutral and narrowly tailored to serve a significant government interest. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). And here, Federal Defendants' actions were both content-neutral (*i.e.*, they did not permit *anyone else* who was causing a disturbance and loitering on federal property to remain nevertheless) and narrowly tailored to address the significant government interest in maintaining the security and order of the federal workplace, pursuant to established federal regulations. *See United States v. Bader*, 698 F.2d 553, 555 (1st Cir. 1983) ("It is well established that the need to safeguard the normal functioning of public facilities is a 'substantial government interest' sufficient to warrant reasonable restrictions."); *Vega v. Chicago Bd. of Educ.*, 338 F. Supp. 3d 806, 811-14 (N.D. Ill. 2018) (the removal of the plaintiff from a "designated public forum" did not violate her First Amendment rights, where the plaintiff had rushed up to the dais at a board meeting, yelled at a board member, shook her fist, interrupted another speaker, and violated public participation guidelines).

9

personnel." *Id.* at 1-2. But the Supreme Court could not have been clearer in requiring that "a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added); Br. at 14; *see also* Opp. at 11 ("conced[ing] to the Defendants' legal analysis of the doctrine of qualified immunity"). Thus, the actions of the "security guards" cannot be attributed to either Defendant Keenen or Defendant Kalenich—the only two individuals Plaintiffs chose to sue in this action—who acted more than reasonably in asking Plaintiffs to leave due to their lack of any DEA business and disruptive conduct.[7] *See* Br. at 16-19.

Finally, Plaintiffs' contention that "the DHS/FPS Order and Federal Code . . . clearly establish the right to film, unobstructed, in publicly-accessible federal lobbies," Opp. at 11, not only is factually incorrect for failing to appreciate the various conduct and security requirements for *all* visitors to federal facilities (*see* Part I, *supra*), but also misunderstands the "clearly established" jurisprudence. "[T]he decisions of the Supreme Court, this court of appeals [the Fourth Circuit], and the highest court of the state in which the case arose" determine whether a right was clearly established at the time of the alleged violation, *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th

---

[7]     Plaintiffs contend that Defendant Keenen called for Federal Protective Service before Plaintiffs raised their voices, used profanity, or engaged in "otherwise questionable conduct." Opp. at 3. Federal Defendants respectfully refer the Court to Plaintiffs' video, which in the first five minutes alone shows Plaintiffs arguing with the security guards, refusing to provide identification or submit to security screening, and attempting to record the contents of the security desk's computer monitors. *See* Pl.'s Video at 0:00-5:25.

In all events, Plaintiffs do not dispute that Defendant Keenen confirmed they had no business with the DEA and were thus loitering before asking for Federal Protective Service. *Id.* at 5:40-5:55. Nor do Plaintiffs dispute that they began shouting expletives, became "incited, impassioned, and overzealous," and attracted a crowd of onlookers due to the disturbance they were causing, *see id.* at 6:00-7:22, before Defendant Keenen first told them they were trespassing on federal property, *see id.* at 7:30-7:45. And Plaintiffs cannot dispute that they were ultimately asked to leave because they were loitering on federal property and had, by their own admission, engaged in disruptive conduct that included (but certainly was not limited to) repeated exclamations of "Fuck the DEA." Compl. at pp. 9-10 ¶¶ 15-16, 23.

Cir. 1999); an agency does not. And here, Plaintiffs have identified no decision from any of those courts—or any court at all—holding that, as of January 2020, an individual was permitted to loiter and film in the lobby of a federal building while yelling, cursing, refusing security screening, and disrupting employees, all in violation of federal regulation. Federal Defendants are therefore entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons and those stated in Federal Defendants' opening brief, the Court should dismiss Plaintiffs' Complaint with prejudice.

Dated: November 17, 2021                    Respectfully submitted,

                                            JESSICA D. ABER
                                            UNITED STATES ATTORNEY

                                    By:  _____/s/_____
                                            CATHERINE M. YANG
                                            Assistant United States Attorney
                                            Office of the United States Attorney
                                            Justin W. Williams U.S. Attorney's Building
                                            2100 Jamieson Avenue
                                            Alexandria, Virginia 22314
                                            Tel:    (703) 299-3799
                                            Fax:    (703) 299-3983
                                            Email:  catherine.yang@usdoj.gov
                                            *Counsel for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and caused a copy to be served by first-class mail on the following *pro se* plaintiffs:

Marc J. Stout
Robert B. Stout
30 Willow Branch Place
Fredericksburg, VA 22405

                                         /s/
                           Catherine M. Yang
                           Assistant United States Attorney
                           Office of the United States Attorney
                           Justin W. Williams U.S. Attorney's Building
                           2100 Jamieson Avenue
                           Alexandria, Virginia 22314
                           Tel:     (703) 299-3799
                           Fax:    (703) 299-3983
                           Email:  catherine.yang@usdoj.gov